## WARNER et al. v. BOYER et al.

### (District Court, E. D. Pennsylvania. June 19, 1896.)

1. SHIPPING—LIMITATION OF LIABILITY—SUPPLIES ORDERED BY MANAGING PART OWNER.

Act June 26, 1884, relieving owners of responsibility beyond the proportion which their respective interests bear to the debt or liability involved, applies in favor of part owners who have committed the management of the vessel to another part owner, in respect to debts for coal furnished at the instance of the latter and without their previous knowledge.

2. SAME—INTERPRETATION OF STATUTE.

Act June 26, 1884, is not to be controlled in its interpretation by the act of 1851 relating to kindred subjects. The language of the two statutes and the state of facts to which they apply are different, and each is to be construed according to its terms.

3. SAME—SALE BY PART OWNER—FOLLOWING PROCEEDS.

Where a managing part owner sells to a third party his interest in the vessel shortly before a libel is filed against the owners for a supply debt, the creditor cannot follow the proceeds of the sale into the hands of such part owner's other creditors.

This was a libel in personam by Warner, Shuster & Co. against Samuel R. Boyer, Daniel C. Boyer, Eugene H. Cathrall, and others, owners of the tug John Wear, to recover for supplies of coal furnished to the tug.

Theo. M. Etting and Wm. H. Shoemaker, for libelants.

Horace L. Cheyney and John F. Lewis, for respondents.

BUTLER, District Judge. The libelants are Philadelphia coal dealers. The respondents are the owners of the tug "John Wear," a Philadelphia vessel.

The proceedings are brought to recover the sum of $655.21 with interest, for coal sold and delivered.

Samuel R. Boyer, one of the respondents, was the managing owner of the tug and owned a seven-sixteenths interest. The other nine-sixteenths interests were owned by the other respondents in different proportions. As the libelants say, "The single question raised in the case is whether, under the facts, the libelants are entitled to a decree against each of the owners, for the entire amount of their debts, or whether the owners are protected from such a decree by the act of 26th June, 1884." The tug was engaged in harbor towage and was in the habit of going to the libelants' wharf to obtain coal whenever she needed it. The coal was purchased in small

quantities on the return of the boat from her various undertakings during a period of three years. The tug came for and got the coal, bills for which were sent to the managing owner on the first of each month, and he made payments on account from time to time. The total amount of coal furnished by the libelants was $1,867.28, and the total payments on account made by the respondents were $1,-206.32. The coal was supplied on the master's order. Sometimes her calls for it may possibly have been anticipated by information from the managing owner. The owners who are contesting payment took no part in the management, nor furnishing supplies. It does not appear that the contestants knew of the purchases of coal from the libelants, at all events not before such purchases were made. Shortly before the libel was filed Boyer sold his interest in the vessel to a third party. Subsequently to filing the libel the contesting respondents paid the libelants' proctor $373.64 as their proportion of the indebtedness. The money was received as if paid into court, and without prejudice to libelants' rights. I do not find any other question in the case than the one which arises under the statute of 1884; and it is unnecessary to enter upon an elaborate discussion of it. Is the statute applicable to the facts? It provides "that the individual liabilities of a ship owner shall be limited to the proportion of any and all debts and liabilities that his individual share of the vessel bears to the whole; and the aggregate liability of all the owners of a vessel on account of the same shall not exceed the value of such vessel and pending freight." The object of the statute, as expressed in its title, is the encouragement of shipping, by limiting the liability of investors in such business. Theretofore the owners of vessels were liable in solido, for the acts of the master (who is their agent), for the contracts of co-owners (with whom their relations were similar to those of partners), as well as for faults of the crew, and of the vessel itself. The purpose of the statute was to relieve them from such responsibility beyond the proportion which their respective interests in the vessel bear to the debt or liability involved. Obligations assumed by their personal or direct contracts are not affected. Conceding that the supplies for the price of which this suit is brought, were purchased by the master alone, it would not be suggested that the statute does not relieve them of liability beyond the proportions stated. Substantially, at least, they were so purchased. The management of the vessel had however been given to Mr. Boyer, who was aware of the purchases, as before stated, and the libelants claim that the contesting respondents are therefore to be treated as if they had personally made the purchases; that Boyer's knowledge vests them with knowledge because of his agency, as manager. He was however no more their agent than the master would have been if the management had been left exclusively to him. He was authorized to attend to the business of the vessel just as a ship's husband or master may do, in the absence of other provision; but his acts in this respect are not the personal acts of the co-owners, and under the statute no more bind them beyond their due proportion of the indebtedness than do those of such husband or master. It is im-

possible to find a just reason for distinguishing between the effect of the acts of these several agents, as respects owners. The allowance of such a distinction as is set up would tend to defeat the object of the statute. While the case of The Giles Loring, 48 Fed. 463, differs from the one before me, the court in passing on the statute in question adopted the views here expressed. In Whitcomb v. Emerson, 50 Fed. 129, the court said:

"It appears that the repairs were furnished upon the order of Roderick [a part owner] alone, who was also the master, without privity of the others owners except as far as the master had implied authority to bind them for necessaries. As the liability of Emerson and Whalen [the other joint owners] arises solely from their ownership of two-thirds, and not on account of personal intervention by them, the liability of each is limited to one-third of the debt, by the act of 1884."

The statute has several times been before the courts, and the expressions of the judges regarding its construction are not entirely harmonious. The weight of authority however, I believe, supports the views above stated. A disposition has been shown in some instances to import into the statute the language of that of 1851, relating to a kindred subject, and having a similar object. The language of the two statutes and the state of facts to which they apply are different, and each must be construed according to its terms.

The libelants contend that the contesting respondents had also direct knowledge of the purchases. I do not find that they had such previous knowledge; the proofs, I think, are to the contrary. Subsequent knowledge would certainly be unimportant. They of course had knowledge that coal, as well as other supplies, would be needed and must be purchased, just as owners in all cases have; and it would make no difference if they had been informed when and where the master contemplated making such purchases. In this there would be nothing to distinguish the case from those in which the master purchases according to common practice; nothing from which an inference could be drawn that they, or the person furnishing the supplies, contemplated a personal responsibility of the owners beyond the limitation provided by the statute. Their liability would arise entirely out of their connection with the vessel as owners.

The claim founded on Boyer's sale of his interest and the transactions connected with it, cannot be sustained. The facts respecting the sale, and use made of the proceeds, are not fully shown, nor clearly exhibited even to the extent shown. It seems to be uncertain how the proceeds were disposed of. It certainly does not appear that the contesting respondents received them, and if they did that the proceeds were subject to a trust in favor of the libelants. If the proceeds went to Boyer or to creditors of his in payment of his debts the libelants cannot justly claim that the money paid them was his, and should therefore be credited to his indebtedness to them.